UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS, TX

_____

| | | |
|---|---|---|
| **MUHAMMAD JAWED & NAJMA JAWED -** HUSBAND & WIFE | & & & & & | |
| *Plaintiffs,* | & & | Case # _____ |
| *v.* | & & & | Jury Trial Demanded |
| **QATAR AIRWAYS Q.C.S.C** | & & & | |
| *Defendants* | & & & | |

_____

## PLAITNIFF'S ORIGINAL COMPLAINT & JURY DEMAND

Muhammad Jawed and Najma Jawed (husband and wife, hereinafter collectively known as Plaintiffs), by and through their attorney file this Original Complaint against Defendant, QATAR AIRWAYS Q.C.S.C., alleging the following upon information and belief:

### JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sec. 1331, insofar as a federal question is presented pursuant to the Convention for the Unification of Certain Rules for International Carriage by Air done at Montreal on May 28, 1999 (the "Montreal Convention"). Defendant QATAR AIRWAYS Q.C.S.C. is a for profit foreign business corporation transacting business within the Northern District of Texas and elsewhere in and throughout United States of America. It provides air transportation for passengers and cargo, operating flights in and outside the continental United States, including the State of Texas.

_____
*Plaintiffs Muhammad & Najma Jawed's Original Complaint*

1

2. Venue is proper in this judicial district pursuant to 28 U.S.C. Sec. 1391, in that the events alleged in this complaint occurred within the jurisdiction of this court and the Plaintiffs to this action are domiciled within the jurisdiction of this court. Defendant is engaged in regular and systematic business and commercial activities in this district.

**PARTIES INVOLVED**

3. Plaintiffs Muhammad Jawed and Najma Jawed, husband and wife, are residents of Richardson, Texas. They were the paying customers of the defendant on or around October 30, 2015.

4. Upon information and belief, Defendant QATAR AIRWAYS Q.C.S.C. is a foreign corporation organized and existing under and by virtue of the laws of the State of Qatar with its principal place of business in Doha, Qatar. Upon information and belief, Plaintiff avers that Defendant QATAR AIRWAYS Q.C.S.C. is authorized to conduct business in the State of Texas besides other states of USA including but not limited to the state of New York.

5. Upon information and belief, Defendant QATAR AIRWAYS Q.C.S.C. was and is a common carrier engaged in the business of transporting passengers for hire by air, operating regularly scheduled passenger flights within this District, namely at Dallas Fort Worth International Airport. Qatar Airways is a common carrier engaged in the international carriage of persons under Article 1 of the Montreal Convention. At all times mentioned herein, Defendant QATAR AIRWAYS Q.C.S.C. was doing business under the assumed name QATAR AIRWAYS.

7. Upon information and belief, Defendant QATAR AIRWAYS Q.C.S.C. (hereinafter "QATAR AIRWAYS") employs ground staff as well as flight crew responsible for

the safe and secure operation of its flights as well as the safety & well-being of its passengers/customers.

## FACTUAL CLAIMS AND ALLEGATIONS

8. On October 30, 2015, Defendant QATAR AIRWAYS operated and controlled a certain aircraft, (the "subject aircraft"), on a flight from DFW International Airport in TX USA, to Doha, Qatar (the "subject flight").

9. On October 30, 2015, Plaintiffs were fare-paying passengers lawfully scheduled to travel from DFW to Doha, Qatar on Qatar Airlines Flight.

10. On October 30, 2015, the subject flight was conducted on an aircraft owned, leased, operated, staffed, or otherwise controlled by the Defendant QATAR AIRWAYS.

11. On October 30, 2015, Defendant QATAR AIRWAYS was responsible for the training, management, supervision, and/or control of its ground staff as well as flight crew aboard the subject flight, including but not limited to the crew's adherence to standard safety policies and protocol pursuant to Montreal Convention.

12. After issuing boarding passes, Defendant's representative informed Plaintiff Jawed that he can go to the Business Lounge (based on his frequent flyer Silver Level membership status). He gave Plaintiff Jawed an access card to the business lounge which stated on its face that it was good for him as well as *one companion*. Defendant's representative made a hand written note on the access card. He was fully aware of the fact that Plaintiff Jawed was traveling with his wife since she was physically present and he had issued her a boarding pass.

13. Plaintiffs was greeted at the door of the Business Lounge by another Qatar Airways representative who took the access card from them & examined it carefully before allowing both of them in the Business Lounge.

14. With express, written permission from the airline's ticketing agent and then careful visual examination of the access card by the designated representative at the door of the Business Lounge, Plaintiff Jawed entered the lounge with one companion i.e. his wife Najma Jawed.

15. Based on the fact that Plaintiff had paid consideration to the airline for the travel at the time of buying the travel tickets, Plaintiffs were paying customers of Qatar Airways with a contract under which the airline was contractually obligated to transport them from Departing Airport to the intended Destination Airport and also provided them all the services offered to them by the airline to similarly situated paying customer and accepted by the Plaintiffs, creating a contractual relationship for the air travel along with all the offered and accepted benefits incidental to the travel.

16. Once inside the Business Lounge, Plaintiffs availed themselves of the complimentary snacks made available for the passengers of Qatar Airways along with beverages. Out of the selection of beverages available, Plaintiffs chose hot tea.

17. Suddenly an employee of Qatar Airlines, wearing a name tag of Mahir Chaudhry, approached Plaintiffs in a very aggressive manner and shouted at the plaintiff stating some thing to the effect that "Only you are allowed in the lounge. Your wife has to leave right now."

18. Plaintiff Najma Jawed was in the process of consuming the cup of hot tea. Plaintiff Jawed told Mr. Chaudhry that the business lounge invitation card expressly permitted him to bring in one companion. Plaintiff Jawed politely advised Mr. Chaudhry that his wife was properly admitted in the lounge and her presence in the lounge was authorized. She did not sneak in the lounge. Plaintiff told Defendant that he can verify this fact by checking the entry card which was in the possession of the door keeper of the Business Lounge.

19. Mr. Chaudhry went to the outside counter visibly agitated and with an aggressive posture. Plaintiff reasonably believe that he went to look at the admission card.   Mr. Chaudhry came back shortly thereafter and again demanded that Plaintiff Najma should leave the lounge immediately. His tone was aggressive and he was very loud, disrespectful and belligerent. Given the fact that Mr. Chaudhry is an employee of Qatar Airline, presumably aware of the surroundings of the Business Lounge, it is reasonable to infer that his display of extreme hostility was either intentional, or at a minimum was the manifestation of reckless disregard for Plaintiff's rights including but not limited to right of privacy.   Plaintiffs believe that Mr. Chaudhry purposefully wanted to shame them, by uttering slanderous and defamatory remarks which were loud enough to be audible to all those present in the Business Lounge.

20. Plaintiff Jawed politely advised Mr. Chaudhry that they will leave the lounge immediately upon finishing with the cups of hot tea they had already served themselves. Contrary to Plaintiffs polite tone, Mr. Chaudhry yelled back " No, I must stand here until she leaves".  He stood right next to Plaintiff's table.

21. At that moment Plaintiffs felt extremely insulted and humiliated. In plain view of all those present in the lounge,  Mr. Chaudhry stood besides Plaintiff's table with clear intention to force them to leave.  While Plaintiff Jawed understand that Mr. Chaudhry was insisting that only Plaintiff Najma should leave, it is unreasonable to expect that Plaintiff Jawed would have stayed back while his wife was expelled from the Business Lounge, unjustly and in such a humiliating manner.

22. Through his actions, posture and verbal outbursts, Mr. Chaudhry made it abundantly clear that he wanted Plaintiffs to exit the Business Lounge immediately.  With the urgency Mr. Chaudhry created demanding that  they should rush out,  Plaintiff Jawed ended up hurting his leg because of sudden movement and the fact that he hit his leg on the table.  Plaintiff

Jawed also experienced sudden & sharp rise in his blood pressure. Plaintiff suffer from hypertension and take medicine under the advice of his physician. Both Plaintiffs exited the lounge, escorted by Mr. Chaudhry who paraded them out like criminals.

23. At the door of the lounge, Plaintiff Jawed asked the person who allowed them in into the lounge about the entry card which he had taken from him when allowing them in the lounge.

24. Turned out that Mr. Chaudhry had taken the entry card and had verified that the card did in fact allowed Plaintiff Jawed to enter the business lounge with one companion. Plaintiff Jawed believe that Mr. Chaudhry was fully aware of the fact that the entry card did allow Plaintiff Jawed and a companion to enter in the business lounge but deliberately subjected them to slander, intentional infliction of emotional distress and in the process caused them bodily injury as well.

25. Realizing his mistake Mr. Chaudhry tried to leave by walking towards an elevator. Plaintiff Jawed tried to stop him and talk to him but Mr. Chaudhry continued towards the elevator stating something to the effect that "I know you. You are a community leader". It should be noted that Plaintiff Jawed is a fairly well known person in the small Pakistani American community living in the DFW area. Judging by his name, Plaintiff believes that Mr. Chaudhry may belong to Pakistani community. Plaintiff is not sure about the reason for this passing remark. However, it strengthen Plaintiff's belief that Mr. Chaudhry's intentions were suspect in this entire episode.

26. Thoroughly insulted and physically hurt, Plaintiff had a brief conversation with a Mr. Rene Carrera - presumably another employee of Qatar Airways. He told Plaintiff that he will report this incident in the form of a complaint.

_____
*Plaintiffs Muhammad & Najma Jawed's Original Complaint*

27. Plaintiffs boarded the plane. During the flight Plaintiff Jawed had to endure pain in his leg. He had to take painkillers for the injury to his leg and an extra dose of hypertension medicine to control his blood pressure.

28. Plaintiff Najma experienced excruciating headache because of the incident.

29. Upon their return back to US, Plaintiff Jawed communicated with Qatar Airways via email to get appropriate resolution. However, his efforts have not resulted in any meaningful resolution.

## CAUSES OF ACTION

**Physical Injury - Strict Liability Under Montreal Convention Articles 17 & 21**

30. The treatment Plaintiffs suffered at the hands of Qatar Airways through its employee caused them deep embarrassment, loss of reputation and physical injury.

14. Plaintiff's claim of injuries allow him to pursue claim pursuant to Article 17 [1] of the Montreal Convention, in that the injuries were caused by an unexpected or unusual event or occurrence external to the Plaintiff, and not by Plaintiff's internal reaction to the normal operation of the aircraft. As a result of said incident & accident, Plaintiff was injured. As a result of said incident & accident, Plaintiff suffered great pain, agony and mental anguish. As a result of said accident, Plaintiff was deprived of his enjoyment of life, pursuits and interests as related to the trip referenced in this complaint. As a result of the foregoing, Defendant is liable to pay full, fair and reasonable damages to Plaintiff pursuant to the Montreal Convention.

---

[1] Article 17.1 of the Montreal Convention creates a presumption of air-carrier liability for "bodily injury" as follows:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

_____

*Plaintiffs Muhammad & Najma Jawed's Original Complaint*

15. Pursuant to Pursuant to Article 21 of the Montreal Convention, for damages arising under Article 17 not exceeding the specified Special Drawing Rights the carrier shall not be able to exclude or limit its liability

16. Defendant cannot meet its burden of proving that deliberate actions of its employee did not cause or contribute to the accident and the resulting injuries to Plaintiff.

17. Defendant cannot meet its burden of proving that the injuries suffered by Plaintiff were caused solely by the acts of third parties.

18. WHEREFORE, Plaintiff demands judgment be entered in her favor and against Qatar, in the sum equal to the specified Special Drawing Rights, together with interest and costs of suit and any further relief the court deems just and appropriate.

### Libel, Slander, and Defamation

**19.** Plaintiff re-alleges all of the preceding paragraphs as if restated herein. Defendant through and at the hands of its employee made inappropriate and inaccurate statements of fact regarding Plaintiff 's conduct and status as an invitee, licensee and contractual beneficiary to the Business Lounge. The slanderous statements and humiliating conduct made by Defendant's employee directly dealt with Plaintiff's presence in the Business Lounge designated for certain travelers waiting to board Qatar Airways plane. The statements made by Defendant's employee were defamatory and injured Plaintiff's reputation as a reputable member of the community and damaged his overall reputation within the community. Defamatory statements & allegations of unauthorized presence in the Business Lounge made by Defendant's employee were untruthful. Defendant's employee Chaudhari acted with malice and negligence when making defamatory statements about the Plaintiffs. As a result Plaintiff has suffered injury to his reputation.

_____
*Plaintiffs Muhammad & Najma Jawed's Original Complaint*

8

### Intentional Infliction of Emotional Distress

20. The conduct of Defendants' employees was intentional and was the proximate cause of severe emotional distress to the Plaintiffs, and the conduct was extreme and outrageous in that it would be regarded as extreme and outrageous by a reasonable person. Defendant's employee appear to have acted with the intent to inflict emotional distress on Plaintiffs based on false charges of unauthorized presence in the Business Lounge . As a result of this intentional infliction of emotional distress, Plaintiffs have suffered damages that are greater than the minimum jurisdictional limits of this Court. Additionally, Plaintiffs are entitled to exemplary damages because Defendant's employee acted with malice.

### Invasion of Privacy

21. Defendants' employees' actions constitute an intentional intrusion on Plaintiffs' common law right to privacy. The employee responsible acted with the intent to inflict extreme emotional distress on Plaintiffs..  This invasion of Plaintiffs' privacy would be highly offensive to a reasonable person, and has caused damages to Plaintiffs that are greater than the minimum jurisdictional requirements of this Court. Additionally, Plaintiffs are entitled to exemplary dan1ages because Defendants' invasion of Plaintiffs' privacy was done with malice.

### Negligence Under Montreal Convention Articles 20 and 21

22. Pursuant to Articles 20 and 21 of the Montreal Convention, Defendant is liable for damages in excess of 113,100 Special Drawing Rights resulting from the negligence or other wrongful acts or omissions of Defendant or its servants or agents

23. Defendants owed Plaintiffs a duty of care to properly train, supervise, and control their employees. Defendant breached this duty by allowing its employee to improperly

_____
*Plaintiffs Muhammad & Najma Jawed's Original Complaint*

question Plaintiffs' integrity with the intent to inflict extreme emotional distress and mental anguish.. Defendants' employees owed Plaintiffs a duty of ordinary care and breached that duty by allowing Plaintiffs' to be impliedly labeled as trespassers and then improperly forced to leave the Business Lounge. Defendants are liable for their employees' failure to act with ordinary care, which was the proximate cause of injury to Plaintiffs. Defendants' acquiescence and toleration of their employees' actions amounts to reckless and/ or conscious indifference to the rights, safety or welfare of others, including Plaintiffs. Thus, Defendants are liable to Plaintiffs for both actual and exemplary damages under the theory of gross negligence. As a result of Defendants' negligence and gross negligence, Plaintiffs have suffered damages that are greater than the minimum jurisdictional requirements of this Court.

## RESPONDEAT SUPERIOR

24.  Defendants are liable for both the intentional torts and negligence of their employees under the doctrine of *respondeat superior*. The above described acts were committed by Defendants' employees in the course and scope of his employment with Defendants. It was through his employment with Defendants that this employees (Mr. Mahir Chaudhry) was able to commit the acts described herein.

## RES IPSA LOQUITUR

**25.**  With respect to Plaintiffs' causes of action under the theory of negligence, Defendant's employee's negligence should be imputed under the doctrine of *res ipsa loquitur*. The character and circumstances surrounding Plaintiffs' injuries are such that the injuries would not have occurred without Defendant's negligence.

## MENTAL ANGUISH

26. As a direct result of Defendants' wrongdoing, Plaintiffs have suffered physical injury as well as severe mental anguish for which Defendants are liable pursuant to the provisions of Montreal Convention as well as under the theories of invasion of privacy, slander and intentional infliction of emotional distress.

## EXEMPLARY DAMAGES

27. Defendants are liable to Plaintiffs for exemplary damages pursuant to Chapter 41 of the Texas Civil Practice & Remedies Code because the intentional conduct described herein was undertaken with malice and/ or gross negligence.

## CONDITIONS PRECEDENT

28. All conditions precedent to the filing of this suit have been performed or have occurred.

## JURY TRIAL

29. Plaintiffs demand a jury trial on all claims triable by the jury and tender the appropriate fee herewith.  Plaintiffs respectfully request that Defendants be cited to appear and answer herein, and that judgment be entered for Plaintiffs against Defendant for the following:

    a. Actual and. consequential damages

    b. Mental anguish damages

    c. Exemplary damages;

    d. Attorney's fees and expenses;

    e. Costs of court;

    f. Pre- and post judgment interest at the maxin1um rate allowed by law;

g. and any further relief to which Plaintiffs are entitled in law or in equity

**WHEREFORE,** Plaintiffs Muhammad Jawed and Najma Jawed demands judgment against Defendant QATAR AIRWAYS in an amount to be determined at trial, together with interest, costs and disbursements of this action.

### JURY DEMAND

Plaintiff demands a jury trial for all claims stated.

**Dated**:  January 29, 2016

**Respectfully Submitted,**

/s/Naim Haroon Sakhia

Naim Haroon Sakhia
Attorney for Plaintiff
CA Bar # 250818
Sakhia Law Group
101 E. Park Blvd # 600,
Plano, TX 75074
Tel: 972 359 9274 | Facsimile: 972 516 3798
Email: info@BillionLaws.com

_____
*Plaintiffs Muhammad & Najma Jawed's Original Complaint*

12